IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**STEPHEN WASHINGTON,**

    **Petitioner,**

  **v.**                                              **CASE NO. 2:05-cv-160**
                                                      **CRIM. NO. 2:97-cr-99**
                                                      **JUDGE GRAHAM**
                                                     **MAGISTRATE JUDGE KING**

**UNITED STATES OF AMERICA,**

    **Respondent.**

**ORDER**
**REPORT AND RECOMMENDATION**

Petitioner, a federal prisoner, has filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. §2255. This matter is before the Court on the instant motion, respondent's return of writ, petitioner's motion to amend the petition, respondent's response in opposition, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **DENIES** petitioner's motion to amend the petition, Doc. No. 749, and **RECOMMENDS** that this action be **DISMISSED.**

**I. FACTS AND PROCEDURAL HISTORY**

The United States Court of Appeals for the Sixth Circuit summarized the facts of this case as follows:

> On October 14, 1997, as part of a 154-count indictment covering eight individuals, Washington was charged with one count of conspiracy to distribute and possess with intent to distribute crack cocaine, 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii); two counts of possession with intent to distribute crack cocaine, *id.;* three counts of distribution of crack cocaine, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 841(b)(1)(B)(iii); and one count of use or carrying of a firearm during a drug-trafficking crime, 18 U.S.C. § 924(c). At trial, several of Washington's associates testified pursuant to agreements with the Government. Lee Gill, the admitted ringleader of the organization

known as the "G.I. Boys" (G.I. standing for Gary, Indiana, the hometown of most of the organization's members), testified that the G.I. Boys distributed cocaine in both crack and powder form. Gill supplied the cocaine to Washington in quantities ranging from one-eighth to one-half of a kilogram, four to five times per month. Gill further testified that he considered Washington to be his "right-hand man," and Washington's status as Gill's approximate coequal was also acknowledged at trial by G.I. Boys' members Anthony Williams (Washington was Gill's "right-hand man") and Mark Hunter (Washington and Gill were "together"). Washington disputed their testimony, asserting that his involvement in the distribution of cocaine was the result of violent threats from Gill.

The evidence further established the use of firearms by the G.I. Boys generally, and by Washington specifically. Gill and Williams testified that all members of the G.I. Boys carried guns-whether or not they were carrying drugs-for protection against, as Gill explained, "[o]ther drug sellers, other people we had a beef within the city, Detroit boys, Columbus boys," and also that, because of their reputation for violent retaliation, the G.I. Boys were rarely challenged by rivals. Gill, Williams, as well as Angelique McKinley, Washington's girlfriend, and William Welch, the government's confidential informant, also testified that Washington carried a gun most or all of the time.

Finally, witnesses testified about several specific drug transactions, two of which are relevant to Washington's appeal. First, both Gill and Welch testified about a transaction that took place on July 31, 1996-also captured in part on videotape-in which Gill gave Washington an ounce of cocaine. An obstruction, however, prevented the videotape from capturing the exchange of the drugs. Second, Welch testified about a transaction between Washington and undercover DEA Agent Rodney Russell, which took place on August 7, 1996 at Welch's apartment. After Russell left the apartment, Washington immediately pulled a gun from his pants pocket.

On September 20, 2001, Washington was convicted on all seven counts. On May 23, 2002, the district court sentenced Washington within the range specified by the U.S. Sentencing Guidelines, and also imposed a three-level sentencing enhancement after concluding that Washington played a supervisory role in the offense.

*United States v. Washington,* 83 Fed.App. 43, unpublished, 2003 WL 22905303 (6th Cir. November

24, 2003). Petitioner was sentenced to an aggregate term of 420 months incarceration plus five years supervised release. Doc. No. 651. Petitioner pursued an appeal, in which he asserted as follows:

> (1) several of his convictions were insufficiently supported by the evidentiary record; and (2) his sentence was improperly enhanced on the basis of his supervisory role in the drug conspiracy.

*Id.* On November 24, 2003, the United States Court of Appeals for the Sixth Circuit affirmed petitioner's convictions and sentence. *Id.*

On February 22, 2005, petitioner filed the instant *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. §2255. He asserts as follows

> 1. Trial counsel was ineffective for failing to file a Rule 29 motion at the end of the trial.
>
> 2. Movant's Sixth Amendment right was violated when jury did not decide amount of drugs attributed to movant.
>
> 3. Movant's Sixth Amendment right was violated when jury did not determine the 3 level enhancement for manager or supervisor.
>
> 4. Movant was denied due process when the judge did not have evidence to determine the specific amount of drugs that should be attributed to movant in the conspiracy.

It is the position of the respondent that these claims are either procedurally defaulted or without merit. On January 3, 2006, petitioner filed a motion to amend his §2255 petition to include the following additional ineffective assistance of counsel claims:

> 5. Counsel failed to object to the judge's untimely instruction to the jury when the jury demonstrated reasonable doubt to convict the

>defendant on §924(c) count by the question jury asked during deliberations.
>
>6. Counsel failed to object to juror Jones' service on the jury when it was evident she was familiar with a law enforcement agent involved with this case and had contact with the agent during pendency of the proceedings.

*Motion to Amend,* Doc. No. 749. It is the position of the respondent that petitioner's request to amend his 2255 petition with additional new claims should be denied as untimely. *Response in Opposition*, Doc. No. 753.

## II. MOTION TO AMEND

28 U.S.C. §2255 imposes a one year statute of limitations on the filing of federal habeas corpus petitions:

>A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of--
>
>(1) the date on which the judgment of conviction becomes final;
>
>(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
>(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.*

Petitioner's conviction became final on February 22, 2004, *i.e.,* ninety days after the United States Court of Appeals for the Sixth Circuit dismissed his appeal, when the time period expired to file a petition for a writ of *certiorari* to the United States Supreme Court. *See Clay v. United States*, 537 U.S. 522, 527 (2003). The statute of limitations expired one year later, on February 22, 2005. Therefore, although the instant habeas corpus petition, signed on February 17, 2005, and filed on February 22, 2005, is timely, any new claims presented by petitioner in his January 3, 2006, motion to amend the petition are time-barred unless such claims "relate back" to the date the initial petition was filed under Federal Rule of Civil Procedure 15. *See Mayle v. Felix,* 125 S.Ct. 2562 (2005).

Rule 15 of the Federal Rules of Civil Procedure governs amendments to federal habeas corpus actions. *See* 28 U.S.C. §2242 ¶3 (stating that habeas corpus actions "may be amended or supplemented as provided in the rules of procedure applicable to civil actions"); *Hodges v. Rose*, 570 F.2d 643, 649 (6th Cir. 1978). The rule provides in relevant part as follows:

> (a) Amendments. A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.
>
> ***
>
> (c) Relation Back of Amendments. An amendment of a pleading relates back to the date of the original pleading when
>
> (1) relation back is permitted by the law that provides the statute of

> limitations applicable to the action, or
>
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading....

Federal Rule of Civil Procedure 15. The rule promotes a "liberal policy of permitting amendments to ensure the determination of claims on their merits." *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir.1987) (quoting *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir.1982)).

> In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Coe v. Bell*, 161 F.3d 320, 341-42 (6th Cir. 1998)(quoting *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir. 1994). Further,

> [d]elay by itself is not sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted.

*Coe v. Bell*, *supra,* 161 F.3d at 342. A district court's decision whether to grant a motion to amend the petition pursuant to Federal Rule of Civil Procedure 15(a) generally is reviewed for an abuse of discretion; however, where the denial is based upon futility, such denial may be reviewed *de novo*. *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 305 (6th Cir. 2001).

In *Mayle v. Felix*, *supra*, 125 S.Ct. at 2562, the United States Supreme Court clarified the circumstances under which a habeas corpus petition might be amended to assert new claims. In that case, the petitioner initially asserted that he had been denied his right to confront witnesses by admission at trial of tape recorded statements of a prosecution witness. The petitioner later attempted to amend his petition to include a claim that he also had been denied a fair trial by admission of his own statements to police which, he alleged, had been coerced. *See id.* The Court of Appeals permitted the amendment to the petition, and the Supreme Court reversed, holding:

> An amended habeas petition... does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth.

*Id*. The Supreme Court reasoned:

> The Civil Rule governing pleading amendments, Federal Rule of Civil Procedure 15, made applicable to habeas proceedings by § 2242, Federal Rule of Civil Procedure 81(a)(2), and Habeas Corpus Rule 11, allows pleading amendments with "leave of court" any time during a proceeding. See Fed. Rule Civ. Proc. 15(a). Before a responsive pleading is served, pleadings may be amended once as a "matter of course," *i.e.*, without seeking court leave. *Ibid.* Amendments made after the statute of limitations has run relate back to the date of the original pleading if the original and amended pleadings "ar[i]se out of the conduct, transaction, or occurrence." Rule 15(c)(2).
>
> The "original pleading" to which Rule 15 refers is the complaint in an ordinary civil case, and the petition in a habeas proceeding. Under Rule 8(a), applicable to ordinary civil proceedings, a complaint need only provide "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Habeas Corpus Rule 2(c) is more demanding. It provides that the petition must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." *See also Advisory Committee's Note* on subd. (c) of Habeas Corpus Rule 2, 28 U.S.C., p. 469 ("In the past, petitions have

frequently contained mere conclusions of law, unsupported by any facts. [But] it is the relationship of the facts to the claim asserted that is important ... ."); *Advisory Committee's Note* on Habeas Corpus Rule 4, 28 U.S.C., p. 471 (" '[N]otice' pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error." (internal quotation marks omitted)). Accordingly, the model form available to aid prisoners in filing their habeas petitions instructs in boldface:

"CAUTION: You must include in this petition all the grounds for relief from the conviction or sentence that you challenge. And you must state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date." Petition for Relief From a Conviction or Sentence By a Person in State Custody, Habeas Corpus Rules, Forms App. (emphasis in original).

A prime purpose of Rule 2(c)'s demand that habeas petitioners plead with particularity is to assist the district court in determining whether the State should be ordered to "show cause why the writ should not be granted." § 2243. Under Habeas Corpus Rule 4, if "it plainly appears from the petition ... that the petitioner is not entitled to relief in district court," the court must summarily dismiss the petition without ordering a responsive pleading. If the court orders the State to file an answer, that pleading must "address the allegations in the petition." Rule 5.

\*\*\*

Congress enacted AEDPA to advance the finality of criminal convictions. *See Rhines v. Weber*, 544 U.S. ----, ----, 125 S.Ct. 1528, 1534, 161 L.Ed.2d 440 (2005). To that end, it adopted a tight time line, a one-year limitation period ordinarily running from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A). If claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's limitation period would have slim significance.... The very purpose of Rule 15(c)(2), as the dissent notes, is to "qualify a statute of limitations." *Post*, at ----2. But "qualify" does not mean repeal. *See Fuller v. Marx*, 724 F.2d 717, 720 (C.A.8 1984). Given AEDPA's "finality" and "federalism" concerns,

> *see Williams v. Taylor*, 529 U.S. 420, 436, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000); *Hicks*, 283 F.3d, at 389, it would be anomalous to allow relation back under Rule 15(c)(2) based on a broader reading of the words "conduct, transaction, or occurrence" in federal habeas proceedings than in ordinary civil litigation, *see supra,* at --- -----10-12.
>
> \*\*\*
>
> ... So long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order.... Our reading is consistent with the general application of Rule 15(c)(2) in civil cases... with Habeas Corpus Rule 2(c)... and with AEDPA's installation of a tight time line for § 2254 petitions....

*Id.* (Citations and footnotes omitted.) In a footnote, the Supreme Court gave examples of claims "tied to a common core of operative facts" that would relate back to the original filing:

> For example, in *Mandacina v. United States*, 328 F.3d 995, 1000-1001 (C.A.8 2003), the original petition alleged violations of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), while the amended petition alleged the Government's failure to disclose a particular report. Both pleadings related to evidence obtained at the same time by the same police department. The Court of Appeals approved relation back. And in *Woodward v. Williams*, 263 F.3d 1135, 1142 (C.A.10 2001), the appeals court upheld relation back where the original petition challenged the trial court's admission of recanted statements, while the amended petition challenged the court's refusal to allow the defendant to show that the statements had been recanted. *See also 3 J. Moore, et al., Moore's Federal Practice* § 15.19[2], p. 15-82 (3d ed. 2004) (relation back ordinarily allowed "when the new claim is based on the same facts as the original pleading and only changes the legal theory").

*Mayle v. Felix, supra*, 125 S.Ct. at 2575 n.7.

In his initial petition, petitioner asserted that he was denied the effective assistance of counsel because his attorney failed to move for a judgment of acquittal, that he was denied his right to a jury

trial in connection with the determination of the amount of drugs that should be attributed to him for sentencing purposes and of whether his sentence should be enhanced for his role as supervisor or manager, and that there was insufficient evidence to support the quantity of drugs attributed to him for purposes of sentencing. *Petition*. Petitioner's motion to amend the petition seeks to assert claims of ineffective assistance of counsel due to his attorney's failure to object to jury instructions issued in response to a jury question, and due to his failure to object to a particular juror. *Motion to Amend*. Both new claims raise issues that differ in time and type from the allegations presented in petitioner's initial §2255 petition.

> As the Supreme Court recently made crystal clear, *see Mayle*, 125 S.Ct. at 2570, a petitioner does not satisfy the Rule 15 "relation back" standard merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance. *See, e.g., Davenport v. United States*, 217 F.3d 1341, 1346 (11th Cir. 2000); *Duffus*, 174 F.3d at 337.

*United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005)(footnote omitted); *see also McClean v. United States*, unpublished, 2005 WL 2172198 (11th Cir. September 8, 2005)(untimely claims of ineffective assistance of counsel due to attorney's failure to show defendant a videotape of the drug transaction and its effect on plea negotiations do not relate back to ineffective assistance of counsel for failing to prepare adequately for trial).

The claims of ineffective assistance of counsel raised by petitioner in his request to amend the petition do not arise out of the same "common core of operative facts," as the claims presented in petitioner's initial and timely §2255 petition. *See Mayle v. Felix, supra.* The Court therefore concludes that the ineffective assistance of counsel claims raised in petitioner's request to amend the petition -- filed after the lapse of the applicable statute of limitations -- do not relate back to his initial

timely claims.  Petitioner's motion to amend the petition, Doc. No. 749, is therefore **DENIED.**

### III.  CLAIM ONE

In claim one of the original petition, petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to move for a judgment of acquittal[1] based upon insufficient evidence on count 23, which charged him with possession with intent to distribute over five grams of crack cocaine, and thereby failed to preserve the issue of insufficiency of evidence for appellate review.  This claim is plainly without merit.

The right to counsel guaranteed by the Sixth Amendment is the right to the effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold*:*

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the

---

[1] Federal Rule of Criminal Procedure 29 provides in relevant part:

(a) Before Submission to the Jury. After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. The court may on its own consider whether the evidence is insufficient to sustain a conviction. If the court denies a motion for a judgment of acquittal at the close of the government's evidence, the defendant may offer evidence without having reserved the right to do so.

(b) Reserving Decision. The court may reserve decision on the motion, proceed with the trial (where the motion is made before the close of all the evidence), submit the case to the jury, and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict. If the court reserves decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved.

> defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Strickland*, at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. Because petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance, if the Court determines that petitioner has failed to satisfy one prong, it need not consider the other. *Id*. at 697.

Petitioner argued on direct appeal that there was insufficient evidence to sustain his conviction on Count 23. The United States Court of Appeals for the Sixth Circuit noted that the claim had been waived because trial counsel failed to move for a judgment of acquittal, but nonetheless concluded that the claim was without merit:

> Washington contends that there was insufficient evidence to convict him on Count 23 of the Indictment, which charged him with possessing with intent to distribute over five grams of crack cocaine on July 31, 1996. The Government again correctly notes that Washington waived this argument by not moving for a Rule 29 judgment of acquittal, and that as a result the proper standard of review is plain error. In any event, both Gill and Welch testified that Washington took possession of the drugs in the transaction that was

12

> videotaped on July 31, 1996. Viewing the evidence in the light most favorable to the Government, we must credit the testimony offered by Gill and Welch. Upon doing so, we easily conclude that there was sufficient evidence to support a conviction under Count 23.

*United States v. Washington, supra.* In view of the foregoing, petitioner cannot establish the ineffective assistance of counsel under *Strickland*. Claim one is without merit.

## IV. CLAIMS TWO AND THREE

In claim two, petitioner asserts that was denied his right to a jury trial because it was the trial judge, not the jury, who determined the quantity of drugs attributable to him for sentencing purposes and who enhanced petitioner's sentence under the United States Sentencing Guidelines based upon his supervisory role. Petitioner asserts that his sentence therefore violates *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker,* 543 U.S. 220 (2005).

As previously discussed, however, petitioner's conviction became final on February 22, 2004, long before the United States Supreme Court's June 24, 2004, decision in *Blakely*, or its January 12, 2005, decision in *Booker.* Further, the United States Court of Appeals for the Sixth Circuit has held that neither *Blakely* nor *Booker* apply retroactively to cases on collateral review. *Humphress v. United States,* 398 F.3d 855, 860 (6th Cir. 2005). Therefore, *Blakely* and *Booker* do not provide petitioner the relief he seeks.

Claims two and three are without merit.

## V. CLAIM FOUR

In claim four, petitioner asserts that he was denied due process because the judge

13

> based his calculation of the drug amount that should have been attributed to [petitioner] on the statements and testimony of [the] government's informant Lee Gill, who was the leader of the alleged conspiracy.... The amount of drugs attributed to [petitioner] was never proved to be physically possessed by him. The District Court relied on just the words of Mr. Gill.

*See Petition*. As noted by respondent, this claim should have been raised on direct appeal, but was not. Therefore, petitioner must demonstrate "cause" for his failure to raise such claim on direct appeal, as well as "actual prejudice" resulting from the error before he may present the claim on federal habeas corpus review. *See United States v. Frady*, 456 U.S. 152, 165 (1982). *See also Murray v. Carrier*, 477 U.S. 478, 485 (1986).

As cause for his procedural default of claim four, the Court assumes that petitioner would argue the ineffective assistance of appellate counsel in failing to present this claim on appeal. "Attorney error may constitute cause if it rises to the level of constitutionally ineffective assistance of counsel.*" Barrow v. United States*, 8 Fed.Appx. 286, unpublished, 2001 WL 278676 (6th Cir. March 13, 2001), citing *Rust v. Zent,* 17 F.3d 155, 161 (6th Cir.1994).

The *Strickland* test applies to appellate counsel. *Burger v. Kemp*, 483 U.S. 776 (1987). Counsel must provide reasonable professional judgment in presenting the appeal. *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985). "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986)(quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). Petitioner has failed establish the ineffective assistance of counsel for failing to raise this issue on appeal under the test set forth in *Strickland*.

The district court's findings of fact concerning the amount of drugs

> attributable to the defendant must be accepted by [the Court of Appeals] unless clearly erroneous. *See United States v. Ward*, 68 F.3d 146, 149 (6th Cir.1995). The district court must set forth the evidence upon which it relies and make specific findings that are supported by a preponderance of the evidence. *See United States v. Baro*, 15 F.3d 563, 569 (6th Cir.1994). When the amount of drugs is uncertain, the district court must "err on the side of caution" to ensure that a defendant is actually more than likely responsible for a quantity greater than or equal to the amount used in the calculation. *See United States v. Ferguson*, 23 F.3d 135, 142 (6th Cir.1994).

*United States v. Long,* 190 F.3d 471, 478 (6th Cir. 1999). Defense counsel objected to the quantity of drugs attributed to petitioner in the *Presentence Investigation Report*. *See Presentence Investigation Report, ¶54; Objections to Presentence Investigation Report.* The Presentence Investigation Report attributed to petitioner 1,500 grams of crack cocaine and five kilograms of powder cocaine, equivalent to 31,000 kilograms of marijuana, which corresponded to a base offense level of 38. *See id.* At sentencing, the Court attributed to petitioner 750 grams of crack cocaine and 1500 grams of powder cocaine, equivalent to 15,300 kilograms of marijuana, which corresponded to a base offense level of 36:

> [COURT]: Counsel, I have reviewed all of the evidence relating to the quantity of drugs that Mr. Washington was involved with during the period of the conspiracy, and I have looked at the testimony of Mr. Gill in particular, and I believe that Gill's testimony is generally credible, and I have decided in fairness to Mr. Washington that we should take the most conservative approach possible in calculating these quantities.
>
> Now, just as a general proposition, Gill testified that he supplied Mr. Washington with one-eighth to one-and-a-half kilos of cocaine, sometimes crack, sometimes powder, at the rate of four to five times per month at various times in 1996 and 1997.
>
> Now, Gill had been incarcerated in early 1996, and when he was released, returned to Columbus and resumed his drug-dealing

15

activities and resumed his relationship with Mr. Washington, but according to Gill's testimony, he was not completely back up to speed. In his words – in other words, the volume of his drug dealing hadn't gotten back to its maximum level until July or September of 1996, and from that point on until Mr. Gill was arrested in early October of 1997, he was actively involved, and during most of that time, Mr. Washington was assisting him.  There are certain periods that we know Mr. Washington was not assisting him and other periods where it's not clear, but again taking the conservative approach, here is the scenario that I believe is supported by the evidence construed most favorably to Mr. Washington.

Again, taking the most conservative estimate from Mr. Gill's testimony, we will start with September of 1996, and we would have three weeks of activity during the month of September.  At that point Mr. Washington was arrested and he was confined in the Franklin County jail for awhile, and then later transferred to a community treatment facility in which he had some degree of freedom.  And I think it's very likely that he utilized that relative freedom of the community treatment facility to resume his drug-dealing activities with Mr. Gill.  But assuming he didn't... we will exclude the last week of September, exclude the whole month of October and November.

And then we have the testimony that Mr. Gill and Mr. Washington had a disagreement when Mr. Gill turned the business over to Mr. Washington in late 1996 to attend a funeral back in Indiana.  When he came back, Mr. Washington didn't have the money he should have had and they had a disagreement.  I don't know how many weeks in late 1996 Mr. Washington was dealing, we will just exclude the whole period until April because Mr. Washington was incarcerated in the early part of 1997 and was released....I am excluding the period of January, February and March, assuming that's the time of the falling out that occurred in late 1996.

We know that Mr. Washington absconded from the community treatment facility on December 20.  Mr. Gill's estimate of the period of the fall-out was two to three months, and again, taking the most conservative approach, we will say it was three months.  So that covers the period from January through the end of March.

Mr. Washington would have been back in business then under that

16

scenario for the month of April. He was arrested at the end of the month of April and was then incarcerated for the next 70 days and was released the first week of July.

So, again, taking the conservative approach, we will say he was back in business for only three weeks in July, and then continued for the months of August and September.

Mr. Gill was arrested on October 4th, and obviously would have ceased supplying Mr. Washington then.

Now, taking the most conservative estimate of the amount of drugs that Mr. Gill supplied Mr. Washington with, he said anywhere from an eighth to a half kilo on each delivery, and we will take the lowest, that would be one eighth of a kilo. And he said four to five times per month, so we will take the lowest, that would be four. If we take Mr. Gill's lowest estimates of quantities and frequency, we have an eighth of a kilogram four times a month or a kilogram a week during periods of activity. On that basis, we would have 375 in the month of September of '96; we would have 500 grams during the month of April of '97; we would have 375 grams during the month of July of '97, and 500 each during the months of August and September of 1997. That would be a total of 2,250 grams.

Mr. Gill said sometimes it was crack that he supplied and sometimes it was powder... and I think the evidence is quite clear – that the dealing here was in crack cocaine, and... Mr. Washington would convert whatever powder cocaine he received into crack cocaine. But, again, taking the most favorable view of the evidence as the most favorable to Mr. Washington, the Court is going to estimate that the amount of crack cocaine was 750 grams and that the amount of powder cocaine was 1500 grams, even though I think that the Court could reasonably find that all of it should be counted as crack because it was all converted into crack.

\*\*\*

The Court finds that those quantities are well supported by the evidence in this case, and the Court believes that they are a very conservative calculation of the amount of cocaine that Mr.

17

>   Washington was involved in distributing during the time of this conspiracy.
>
>   \*\*\*
>
>   [PROBATION OFFICER]: ... 750 grams of crack converts to 15,000 grams of marijuana equivalency, and the 1,500 grams of cocaine powder convert to 300 kilograms of marijuana equivalency for a total of 15, 300 kilograms of marijuana equivalency.

*Sentencing Transcript*, at 30-35.

Contrary to petitioner's argument, the record fails to reflect that the Court's determination of the quantity of drugs that should be attributed to petitioner was improper or erroneous. Petitioner has failed to establish the ineffective assistance of counsel due to his attorney's failure to raise such issue on appeal. Petitioner has likewise failed to establish cause or prejudice for his procedural default of claim four.

## VI.

For the foregoing reasons, the Court **DENIES** petitioner's motion to amend the petition, Doc. No. 749, and **RECOMMENDS** that the petitioner's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255 be **DISMISSED**.

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper

objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation.  See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).


April 18, 2006                                              *s/Norah McCann King*
                                                            Norah McCann King
                                                            United States Magistrate Judge